DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15CV484-MOC
(3:11CR353-MOC-DCK-1)

| | |
|---|---|
| ILDEFONSO MADRID FLORES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1).

I.  **BACKGROUND**

A. **Offense Conduct**

In October 2011, law enforcement officers seized more than a kilogram of cocaine during a traffic stop of Joshua Poulin in Charlotte, North Carolina, which ultimately led them to Poulin's source of supply, David Kennedy, and Kennedy's source of supply, Petitioner Ildefonso Madrid Flores. (Trial Tr. at 77).[1] Poulin identified Kennedy as his source. (Id. at 77-79, 309-10). With Poulin, law enforcement agents arranged to purchase two kilograms of cocaine from Kennedy. (Id. at 81-83, 86-89). Officers then executed a search-and-seizure warrant at Kennedy's residence, while Kennedy was away, and recovered two kilograms of cocaine from a Subaru Brat

---

[1] "Trial Tr." refers to the transcript of the trial and other proceedings held before this Court on May 8-10, 2012. These transcripts appear on this Court's docket in Petitioner's underlying criminal case at docket entry numbers 115-18. The page numbers cited here refer to the original page numbers in the transcripts.

1

parked behind the residence. (Id. at 87-89). Officers arrested Kennedy when he arrived home. (Id. at 92). Kennedy agreed to cooperate with the officers, informing them that he had received the two kilograms of cocaine from Petitioner, and that the cocaine was for Poulin. (Id. at 96, 243-46). Kennedy also explained that he owed Petitioner $70,000 for that cocaine. (Id. at 96, 261).

Law enforcement officers arranged for Petitioner to pick up money that Kennedy owed him for the cocaine that Petitioner had supplied. (Id. at 96-99). Working with officers, Kennedy informed Petitioner by telephone that the money would be "in the truck." (Id. at 263). Petitioner arrived at Kennedy's residence about an hour later in a white van driven by another individual. (Id. at 100, 143-45). Officers arrested Petitioner after he got out of the van and approached a truck at the residence. (Id.). Petitioner was subsequently charged with conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841 and 846.

### B. Petitioner's Trial and Motion for Mistrial

Petitioner pleaded not guilty and, after a three-day trial, a jury convicted Petitioner of conspiracy to possess with intent to distribute at least 500 grams of cocaine, 21 U.S.C. § 846. (Id. at 527). Petitioner was represented by federal defender Cecilia Oseguera at trial. The jury heard from several witnesses called by the Government, including Poulin and Kennedy. (Id. at 241, 305). After the Government rested, the Court addressed Petitioner and conducted a colloquy designed to ensure that Petitioner understood that he had the right to decide whether to testify and that he made that decision knowingly and voluntarily. (Id. at 384-386). Petitioner affirmed that he understood he had a constitutional right to testify on his own behalf and that he "retain[ed] the ultimate authority to decide whether or not to testify." (Id. at 384). Petitioner

2

affirmed that he "discussed this right with [his] attorney" and that he was "satisfied he understood that right." (Id.). Petitioner also affirmed that no one had "threatened [him] or made any promises to [him] of any kind" that had "influenced [his] decision" about whether to testify. (Id.). Petitioner personally affirmed that it was his decision "not to testify" at trial. (Id. at 385). This Court then concluded that Petitioner "freely, knowingly and voluntarily waived his right to testify." (Id. at 385-86).

Before trial, this Court had issued a subpoena to New Beginnings Counseling Center, where Kennedy had attended court-mandated counseling sessions, for Kennedy's mental-health records, at the request of his attorney. United States v. Flores, 565 F. App'x 204, 204-05 (4th Cir. 2014). The day before the trial began, a representative of New Beginnings mistakenly delivered the subpoenaed files to an Assistant United States Attorney who was not involved in Petitioner's case, instead of to the Court. Id. at 205. When the Government learned of the mistake, the Government turned over to the Court a copy of Kennedy's New Beginnings file that it had obtained from Kennedy's lawyer. Id. "Unbeknownst to the prosecutor, [Petitioner's] attorney, or [this Court], these records were incomplete and not identical to those that New Beginnings had improperly delivered the previous afternoon." Id.

While the jury was deliberating, the Government turned over Kennedy's complete New Beginnings file, which New Beginnings had misdelivered. Id. at 205. The Government informed the Court and Petitioner's attorney that it had learned, that morning, that the file it had previously turned over was incomplete. Id.; (Trial Tr. 490). The Court and Petitioner's attorney reviewed the complete file. Id. at 205-06. After the misdelivery of the evidence was discovered, and before the jury verdict, the Government verbally communicated to undersigned counsel a plea to a Misprision of Felony. (Doc. No. 9-1 at ¶ 7). The misprision of felony conviction

3

would have carried a sentence of 17 to 27 months. Petitioner's counsel Cecilia Oseguera discussed the verbal plea agreement with Petitioner, and Petitioner did not accept the plea agreement. Through attorney Oseguera, Petitioner moved for a mistrial and a new trial, alleging a violation of the discovery obligation described in Brady v. Maryland, 373 U.S. 83 (1963), which this Court denied after full briefing. Id. at 206. The Court of Appeals for the Fourth Circuit affirmed, and the United States Supreme Court denied Petitioner's petition for a writ of certiorari on October 6, 2014. Flores v. United States, 135 S. Ct. 186 (2014).

### C. Petitioner's Motion to Vacate

Petitioner placed the pending motion to vacate in the prison system for mailing on September 30, 2015, and it was stamp-filed in this Court on October 13, 2015. In the motion to vacate, Petitioner contends that he was denied the effective assistance of counsel during trial based on two alleged errors by his attorney Oseguera. First, Petitioner alleges that his attorney advised him not to accept the verbal plea offer made during trial before the jury verdict, and that counsel erroneously predicted with certainty that the charges against him would be dismissed after a motion was brought under Brady v. Maryland, 373 U.S. 83 (1963). Second, Petitioner alleges that his attorney erroneously advised him not to testify in his own defense. On September 14, 2016, this Court held an evidentiary hearing as to Petitioner's first theory of ineffective assistance related to the advice he received surrounding a plea offer. Specifically, the scope of the hearing was limited to (1) whether Petitioner's counsel advised him not to accept a plea offer made during trial; (2) whether Petitioner's counsel stated that she was certain that the charges against Petitioner would be dismissed; and (3) whether Petitioner elected not to accept the plea offer.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

In Missouri v. Frye, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, 132 S. Ct. 1376

(2012), the Supreme Court held that a criminal defendant has a right to the effective representation of counsel during the plea-bargaining stage of the prosecution and that whether this right was abridged is governed by the familiar standard described in Strickland v. Washington. Frye, 132 S. Ct. at 1405-06; Lafler, 132 S. Ct. at 1384. In Frye, the Court held that this right is abridged when a defense lawyer allows a government offer to expire without advising the defendant of the offer or permitting him to consider the government's offer. Frye, 132 S. Ct. at 1408. In Lafler, the Court held that this right was abridged when a defendant rejected two plea offers based on counsel's advice that the prosecution would be unable to prove that he shot the victim with intent to murder her because the victim had been shot below the waist. Lafler, 132 S. Ct. at 1383. The parties in Lafler agreed that counsel's representation was deficient when he advised the defendant to reject the plea offer on the grounds he could not be convicted at trial. Id. Applying Strickland, the Court in Lafler held that where a defendant argues that deficient advice resulted in his rejection of a favorable plea offer, he must show, in addition to the deficient advice, that (1) but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, (2) that the court would have accepted its terms, and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Id. at 1385.

     Petitioner first contends that his attorney denied him the effective assistance of counsel by advising him to reject a plea offer made during trial and informing him that she was certain that the charge against him would be dismissed based on an alleged Brady violation. (Doc. No. 1 at 7). He further alleges that his attorney "refused to tell the Government and the Court that he wanted the deal proffered by the Government." (Id.). Petitioner's attorney's sworn statement

and her testimony at the evidentiary hearing establish that that she did not advise him to reject the plea offer or state that she was certain the charge against him would be dismissed. To the extent that Petitioner testified at the hearing that his attorney told him she was certain that the charge would be dismissed based on a Brady violation, this Court finds Petitioner's testimony not credible. Petitioner, accordingly, cannot establish that his Sixth Amendment rights were violated. As counsel explains in her affidavit, and as she confirmed in her testimony in the evidentiary hearing, the Government orally communicated a plea offer to her before the jury reached a verdict. She discussed with Petitioner the agreement and his potential sentence if he were to accept that offer. (Doc. No. 9-1 at ¶ 7: Oseguera Aff.). Petitioner's attorney states that she never told Petitioner not to accept the plea offer, and she also stated in the evidentiary hearing that Petitioner never told her that he wanted to take the plea. (Id.). Petitioner "maintained his innocence" and told his attorney "that he was not guilty and that he wanted to wait for the jury to return the verdict." (Id.). Petitioner's attorney asserted in her affidavit and in the evidentiary hearing that did not tell him that he would be home much sooner because the case would be dismissed or that she was sure that the case would be dismissed. (Id.). Again, to the extent that Petitioner testified to the contrary at the evidentiary hearing, this Court finds his statements to be not credible.

  The Court also notes that statements that Petitioner's attorney made to the Court in Petitioner's presence at an attorney-inquiry hearing, long before Petitioner accused her of deficient performance in his motion, corroborate her sworn statements, both in her affidavit and in the evidentiary hearing, before this Court. At the attorney-inquiry hearing, conducted after the trial concluded and while Petitioner's motions for a mistrial and a new trial were pending, Petitioner's attorney informed the magistrate judge that she believed the Court was "inclined to

give us a mistrial." (Crim. Case No. 3:11-cr-353, Doc. No. 132 at 12-13: Tr. of Inquiry to Counsel). She further opined, "I do believe we're going to have another trial after [the Court] rules on these motions," and "I do think that we're probably going to get another trial." (Id. at 12-13).

Counsel's statements corroborate her sworn statement that she never expressed certainty that the charges against Petitioner would be dismissed. Her statements to the magistrate judge indicating that she expected another trial are inconsistent with Petitioner's contention that his attorney told him that he "could reject the deal, have the case dismissed, and then go free." (Doc. No. 1 at 7 (emphasis in original)). Moreover, Petitioner addressed the Court directly during the attorney-inquiry hearing, and his complaint about his attorney at the time contradicts what he now contends. That is, at that hearing, Petitioner complained that his attorney did not present enough evidence at trial. (Crim. Case No. 3:11-cr-353, Doc. No. 132 at 11). Petitioner said nothing about any refusal by his attorney to communicate his desire to accept a plea agreement. To the contrary, he indicated that his attorney encouraged him to plead guilty, telling the Court, "All she's ever said is, sign, sign. You're guilty." (Id.). In sum, both the affidavit and testimony of Petitioner's attorney at the evidentiary hearing establish that her advice was not deficient and did not result in prejudice. Discussing the agreement with Petitioner and his potential sentencing exposure was well within the "wide range of reasonable professional assistance" the Sixth Amendment permits.

The Court further finds that, even if counsel had misjudged the strength of Petitioner's potential Brady claim, Petitioner would remain unable to establish that his attorney's performance was constitutionally deficient. The Supreme Court has explained that "uncertainty is inherent in predicting court decisions." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Moreover, an erroneous prediction by counsel of what a court will do ordinarily does not establish constitutionally deficient performance. See Lafler, 132 S. Ct. at 1390-91 ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."); McMann, 397 U.S. at 770 ("[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession."); Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984) (holding that an attorney's "grossly misinform[ing]" a defendant "about parole possibilities" did not establish constitutionally ineffective assistance). Even if, as Petitioner alleges, his attorney had erroneously expressed certainty about his success on the Brady theory, that prediction would not have violated Petitioner's Sixth Amendment rights. See United States v. Patterson, 525 F. App'x 681, 684-85, 685-86 (6th Cir. 2013) (holding that allegation that defendant went to trial only because counsel "promised" him that he would win case on Fourth Amendment issue and advised him not to accept plea offer did not establish constitutionally deficient performance). In sum, for these reasons, Petitioner has not shown that his attorney's performance related to plea negotiations was constitutionally deficient.

Petitioner next contends that his attorney was constitutionally deficient for advising him not to testify on his own behalf. He alleges that his attorney told him that his testimony "would mess up his case." (Doc. No. 1 at 9). He also alleges that she "implied" that he would be "doing something wrong if he testified." (Id. at 9-10). Petitioner's attorney denies Petitioner's allegations, but Petitioner's contention would be insufficient as a matter of law even without input from his attorney. Petitioner has identified nothing in the record or elsewhere that suggests, let alone proves in the light of the strong presumption mandated by Strickland, that the advice he alleges his attorney gave was anything other than entirely reasonable. Petitioner's

9

testimony could well have bolstered the Government case if the jury had found him not credible. "A defendant's credibility is a material consideration in establishing guilt, and if a defendant 'takes the stand … and denies the charges and the jury thinks he's a liar, this becomes evidence of guilt to add to the other evidence.'" See United States v. Burgos, 94 F.3d 849, 868 (4th Cir. 1996) (en banc) (alterations omitted) (quoting United States v. Zafiro, 945 F.2d 881, 888 (7th Cir. 1991), aff'd, 506 U.S. 534 (1993)). Moreover, if this Court were to conclude that his testimony was willfully false, he could have faced a greater sentence. See U.S.S.G. § 3C1.1.

Petitioner also identifies no testimony that he could have given that suggests either that his attorney's advice was unreasonable or that he suffered prejudice as a result of his omission to testify. See United States v. Terry, 366 F.3d 312, 316 (5th Cir. 2004) (rejecting theory that attorney erroneously advised defendant to testify because defendant could not show prejudice). Petitioner identifies nothing that he would have said in his own defense, let alone anything with a reasonable probability of affecting the outcome of his trial. Petitioner's conclusory allegation that his attorney's advice amounted to "coercion," making his waiver of his right to testify in his own defense unknowing or involuntary is directly contradicted by the record. This Court conducted a thorough colloquy directly with Petitioner at the time of his trial. During that colloquy, Petitioner specifically confirmed that nobody had "threatened [him] or made any promises to [him] of any kind" that had "influenced [his] decision" about whether to testify. (Trial Tr. at 384-85). He also confirmed that he understood the decision was his alone, and that his decision was "not to testify." (Id.). This Court then concluded that Petitioner "freely, knowingly and voluntarily waived his right to testify." (Id. at 385-86). Petitioner's contradictory allegations in his motion under Section 2255 offer him no assistance. See Jackson v. United States, 638 F. Supp. 2d 514, 528 (W.D.N.C. 2009) (holding that allegations in a motion

10

under Section 2255 that are contradicted by the record fail as a matter of law). In sum, Petitioner's ineffective assistance of counsel claim related to his decision not to testify on his own behalf at trial is without merit.

## IV. CONCLUSION

For the reasons stated herein, the Court will deny and dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED** with prejudice.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: November 14, 2016

Max O. Cogburn Jr
United States District Judge